UNDERFEED STOKER CO. OF AMERICA v. SANFORD RILEY STOKER
CO., Ltd. et al.

(District Court, D. Massachusetts.  July 2, 1914.)

No. 545.

PATENTS (§ 328*)—INFRINGEMENT—FURNACE.

The Daley patent, No. 644,664, for a furnace, *held* infringed, on mo-
tion for preliminary injunction, by a furnace which contained nonfunc-
tional and immaterial modifications of the patented structure, designed
merely to avoid the language of the claims of the patent.

In Equity.  Suit by the Underfeed Stoker Company of America
against the Sanford Riley Stoker Company, Limited, and others.  On
motion for preliminary injunction.  Motion granted.

Fish, Richardson, Herrick & Neave, of Boston, Mass., for plaintiff.
Louis W. Southgate, of Worcester, Mass., for defendants.

BROWN, District Judge.  This is a petition for a preliminary in-
junction against infringement of letters patent No. 644,664, March 6,
1900, to Fred A. Daley, for furnace.

The opinion of this court, handed down May 22, 1914, in Equity No.
459, 214 Fed. 799, a case brought by this complainant against R. San-
ford Riley et al., sufficiently sets forth the nature of the Daley inven-
tion and previous litigation on the Daley patent.

The defendants' device in the present case is the Riley stoker pre-
viously found to infringe, with modifications which consist in adding
to the Riley stoker thick brick walls, which completely fill the space
under each retort and divide the space beneath the fire box, and in
placing an air chamber outside and in front of the stoker.  These
changes were made in order that the defendants' stoker should be clear
of the patent to Daley.

It is contended that the characteristic feature of the Daley patent,
namely, "a large air chamber beneath the retort and fuel-bearing sur-
faces," is now eliminated, and  that, therefore, there is no infringe-
ment.

In Westinghouse v. Boyden Power Brake Company, 170 U. S. 537,
568, 18 Sup. Ct. 707, 722 (42 L. Ed. 1136), the Supreme Court said:

"We have repeatedly held that a charge of infringement is sometimes made
out, though the letter of the claims be avoided."

By bricking up the space underneath the retorts the defendants have
made inapplicable the words "beneath the retort."  The only function
of these brick walls is to make these words inapplicable to the defend-
ants' device.  They perform no useful function, and so far as the op-
eration of the stoker is concerned are merely a useless addition.  The
defendants' affidavits and arguments disclose no reason for the addi-
tion of these brick walls other than the desire to avoid the claims of the
Daley patent.  As the bottom of the Daley retort is filled with green
fuel this part of the retort is cool, and there is no need to cool it by the
incoming air.  The Daley retort has slanting sides with a rounded bot-

tom, so that Daley's air chamber is beneath the sloping sides of the retort as well as beneath the bottom of the retort. Daley in his specification says:

"The in-rushing air comes directly in contact with the walls of the retort as well as with the fuel-supporting plates along the sides of the retort, so that these portions of the furnace are kept cool by the air, their life being thereby increased."

The defendants' retorts are substantially rectangular. There is no air chamber underneath the bottoms of the retorts, which are covered with green coal and are cool. At the sides of the retorts, however, there are air chambers wherein air under pressure is present to cool the walls of the retort as well as the fuel-supporting plates along the side. The defendants, therefore, use an air chamber to perform the same functions that are performed by Daley's air chamber.

The defendants' difference from Daley seems to be this: That while Daley's air chamber underlies, not only the portion of the walls of the retort, which needs cooling, but also the portion, which needs no cooling, the defendants' air chamber does not underly the part of the retort which needs no cooling, but does come in contact with the parts of the retort which need cooling. The fact that the defendants use an outside air chamber in connection with air chambers at each side of the retort does not avoid infringement. This is substantially the same question that arose concerning the Taylor patent in Underfeed Stoker Co. v. American Ship Windlass Co. (C. C.) 165 Fed. 65, 78.

Daley's inventive conception included the direction of his entire supply of air against the heated parts of the furnace, as was stated on page 79 of the above opinion. That he also directed his air supply against portions of the furnace which were not heated—that is, the bottoms of the retorts—is not a reason why his functional feature of directing his air supply against the heated parts of the furnace can be appropriated by so constructing defendants' device as to exclude the nonfunctional contact of the incoming air with the cool parts of the retort. The defendants' structure is functionally the same as that which was held to infringe the Daley patent.

In Mr. Riley's affidavit he states that in adopting the new construction he was guided by the prior patent to A. F. Brown, No. 570,978, November 10, 1896. It is not apparent, however, that any feature of the defendants' stoker was adopted from the Brown patent. This patent is used rather as an attempted justification by the prior art than as the guide followed in designing the construction of the defendants' modified stoker. The Brown patent was before the court in the previous litigation over the Taylor stoker, but was held not to anticipate the Daley patent. Brown shows the use of hollow tuyere blocks which extend down into the retort, but the limited space within these tuyere blocks does not correspond to Daley's large air chamber. The tuyere blocks are supplied from two horizontal air pipes, but the air in these horizontal pipes does not come in contact with the fuel-bearing surfaces nor with the sides of the retort. The air spaces in the hollow tuyere blocks and the air spaces in the horizontal conduits are connected by restricted openings, but this construction does not correspond

either to Daley's air chamber or to the defendants' air chamber. The air conduits more nearly resemble those of the Garden patent, No. 648,251.

I agree with the view of defendants' expert, Mr. Jackson, that Mr. Riley has not taken the Brown structure as the foundation for his modified structure, but that he has made a colorable modification of the Daley furnace, without departing substantially from its structure or mode of operation.

There is also raised by the affidavits a question as to whether in the Riley stoker the fuel-supporting surfaces act to maintain air under pressure below them. This is a renewal of a controversy which was determined in favor of the complainant in the former case, Equity No. 459, 214 Fed. 799.

There is substantially the same difference of opinion of the experts as to the significance of the tests, and I see no sufficient reason for modifying the conclusion as to this point reached in the former opinion. The modifications of the Riley structure, being nonfunctional and immaterial, must be regarded as designed merely to avoid the language of the claims of the Daley patent. To hold that a valid patent can thus be avoided would be to regard the question of infringement merely as a verbal matter, and to disregard the rule above quoted from Westinghouse v. Boyden, 170 U. S. 537, 568, 18 Sup. Ct. 707, 42 L. Ed. 1136.

The petition for a preliminary injunction is granted, and a draft decree may be presented accordingly.